IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THE DRY DOCK, L.L.C.,

                          Plaintiff,                            OPINION and ORDER

      v.

                                                  09-cv-396-bbc

THE GODFREY CONVEYOR COMPANY, INC.
d/b/a GODFREY MARINE and LIPPERT
COMPONENTS MANUFACTURING, INC.
d/b/a ZIEMAN MANUFACTURING,

                          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

     Plaintiff The Dry Dock, LLC brings this case against defendants Godfrey Conveyor Company, Inc., d/b/a Godfrey Marine, and Lippert Components Manufacturing, Inc., d/b/a Zieman Manufacturing, for alleged breaches of dealership agreements and other contracts stemming from allegedly defective boats and trailers sold to plaintiff by defendant Godfrey Marine.

     Plaintiff alleges that 24 of the 27 boat and trailer combinations it bought from defendant Godfrey were defective in some way.  For example, some of the boats had cracks in the windshield and "transom welds" or had gauges that were not completely wired and all came in a generally dirty condition.  Various trailers were defective as well.

1

Plaintiff claims damages in the following four general categories: (1) reimbursement for repair work performed on defective boats; (2) reimbursement for repair work performed on defective trailers; (3) interest accrued on the boats and trailers that were being repaired; and (4) other "out-of-pocket" damages.   The "out-of-pocket" damages include items such as rigging and unrigging boats, rent and utilities for trailers that were waiting to be repaired, cleaning up the shop after Godfrey Marine's employees left it in disarray, lost sales caused by plaintiff's inability to sell the boats in question within the first year  and the loss of the future service revenue that would have followed from those sales.

The case is before the court on summary judgment motions filed by both defendants. I conclude that both defendants are entitled to summary judgment in their favor on all of plaintiff's claims with one exception as to defendant Godfrey Marine.  Defendant Godfrey has not shown that plaintiff could not prove that this defendant breached its implied warranty of merchantability with respect to the boats and trailers it delivered.  However, under Wisconsin law, plaintiff's damages for such an implied breach are limited to the difference between the value of the goods when they were accepted by plaintiff and the value they would have had the goods been as warranted.  Wis. Stat. § 402.714(2).  Plaintiff is not entitled to consequential or incidental damages.

2

Before addressing the summary judgment motions, I must discuss several problems with the documents submitted by plaintiff in opposition to the motions for summary judgment.

First, as in plaintiff's other case before this court, case no. 09-cv-271-bbc, plaintiff has failed to comply with the court's procedures for proceeding on summary judgment motions, despite having been warned about the procedures by the magistrate judge in a document titled <u>Procedure To Be Followed On Motions For Summary Judgment</u>, attached to Magistrate Judge Stephen Crocker's July 22, 2009 preliminary pretrial conference order in this case, dkt, #24, and again in the order entered in 09-cv-271, dkt. #85, granting summary judgment to the defendant and against plaintiff Dry Dock.  A party responding to a motion for summary judgment must file a brief, together with numbered responses to the moving party's proposed findings of fact and supporting evidentiary materials.  In addition, a responding party may submit its own proposed findings of fact.  Each response or proposed finding must be based on attached evidentiary materials, cited expressly by the proponent of the finding.  The court will not sift through stacks of documents submitted by a party.

Plaintiff has filed one document that combines its brief with its responses to selected proposed findings of fact filed by each of defendants in support of their motions for summary judgment, and has attached voluminous evidentiary materials to the brief.  This document is unfocused and difficult to understand.  It is unclear whether plaintiff considers

3

its brief to contain its own proposed findings of fact.  The brief contains many citations to the evidentiary materials submitted by plaintiff, but it does not conform to the court's standard for proposed findings of fact.  As stated in the court's procedures, facts contained only in plaintiff's brief will not be considered.

Plaintiff's responses to defendants' proposed findings of fact will be considered to the extent they are supported by admissible evidence and are referred to in a way that allows the court to locate the evidence.  Defendants' proposed findings of fact that are unopposed by plaintiff will be considered undisputed.  Procedure, II.C; ("A fact properly proposed by one side will be accepted by the court as undisputed unless the other side properly responds to the proposed fact and establishes that it is in dispute"); Hendrich v. Board of Regents of the University of Wisconsin System, 274 F.3d 1174, 1177 (7th Cir. 2001) (upholding this court's local rules adopting moving party's proposed findings of fact when non-moving party fails to respond properly).

In addition, plaintiff has submitted a document titled "Summary of Testimony by Mick B. Howland," president and co-owner of plaintiff, without explaining what its intentions are for this document.  It is unsworn, so it cannot be an affidavit.  It cannot be treated as proposed findings of fact because most of the numbered paragraphs contain several statements rather than sticking to single statements for each paragraph, as mandated by the court's procedures.  Also, most of the assertions made in the document do not include

citations to attached evidence, and the citations that are present generally cite to documents as a whole rather than to particular locations in a document. However, to the extent the document contains arguments about some of the legal issues involved in the case, I will consider it as part of plaintiff's brief.

Next, defendant Godfrey Marine argues that several of the exhibits used by plaintiff in its response to its proposed findings of fact should be excluded under Fed. R. Civ. P. 37(c)(1). The exhibits at issue are

- Exhibit B, an invoice of a Godfrey Marine sale to plaintiff showing a "Grow Boat Marketing Fund" charge;
- Exhibit 30, Godfrey Marine's mission statement;
- Exhibit 31, Godfrey Marine's "2007 Polar Kraft/Parti Kraft Dealer Program"; and
- Exhibit 33, an April 17, 2006 fax from plaintiff to Godfrey Marine.

In an affidavit, defendant Godfrey Marine avers that plaintiff did not produce these documents until it filed its response to defendants' motions for summary judgment. Godfrey Marine attaches a copy of plaintiff's December 1, 2009 response to its request for production of documents. In response to Godfrey Marine's request for "[a]ny and all documents which support the factual basis of each and every claim by Plaintiff, whether set forth in your Complaint or otherwise, which you assert in this action," plaintiff produced Exhibits 1-22, but never supplemented its disclosure as required under Rule 26(e)(1)(A).

Plaintiff may not use these exhibits in its response to defendant Godfrey Marine's motion for summary judgment. Rule 37(c)(1) states that "[i]f a party fails to provide

5

information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Plaintiff has not shown how it could have been substantially justified in failing to produce these documents.  Plaintiff should have had no problem locating them; it states explicitly that exhibits 30, 31 and 33 are "true and exact business records kept at The Dry Dock L.L.C.," Corrected Aff. of M. Howland, dkt. #91, at 9, and Exhibit B appears to be a business record as well.  The withholding of these documents cannot be called harmless, because they are cited in many of plaintiff's arguments in opposition to summary judgment.  Defendant Godfrey Marine relied on the documents produced by plaintiff to help form the record on which it believed that summary judgment was appropriate and moved accordingly.  Plaintiff cannot swoop in with new evidence at the last minute in an attempt to stave off summary judgment. Applying Rule 37(c)(1), I will not consider plaintiff's exhibits B, 30, 31 and 33 in ruling on defendants' motions for summary judgment.

Finally, plaintiff attempts to rely on its Exhibit C, a "Final Pretrial Report" submitted in an Eastern District of Wisconsin case in which defendant Godfrey was involved.  The document contains assertions by the opposing party in that case to the effect that it was Godfrey Marine's de facto exclusive dealer in its territory.  This document is merely an

unsworn framing of the issues by a litigant in another proceeding, no different from a party's brief.  It is not properly admissible evidence and I will disregard it.

Taking these rulings into account, I find from the parties' submissions that the following facts to be material and undisputed.

## UNDISPUTED FACTS

### A. <u>Parties</u>

Plaintiff The Dry Dock, LLC is a Wisconsin limited liability company with a principal place of business in Hudson, Wisconsin.  The only members of plaintiff are Barbara and Mick Howland, both of whom are citizens of Wisconsin.  Plaintiff sells a wide variety of boats, boat accessories, docks and outdoor power equipment such as snow blowers, lawn mowers and chainsaws.  Defendant Godfrey Conveyor Company, Inc., d/b/a Godfrey Marine, is located in Elkhart, Indiana.  It manufactures pontoon, deck and fishing boats. Defendant Lippert Components Manufacturing, Inc., d/b/a Zieman Manufacturing, is an Indiana corporation with a principal place of business in Goshen, Indiana, that manufactures boat trailers.

B. <u>Defendant Godfrey Marine's Dealer Program</u>

Defendant Godfrey Marine's fishing boats are sold under the tradename Polar Kraft. Godfrey Marine offers the sale of trailers along with its Polar Kraft boats. Godfrey Marine does not manufacture the trailers it sells, but purchases them from a third party. The trailers sold with Godfrey Marine's Polar Kraft boats were manufactured by defendant Lippert Components Manufacturing.

Defendant Godfrey Marine distributes its boats through a dealership network throughout the United States, Canada and internationally. Local dealers may apply through Godfrey Marine's established dealership application process to distribute its products.

The relationship between defendant Godfrey Marine and its dealers is limited; Godfrey Marine has not historically provided dealers with a defined "territory" in which they may sell boats and has not guaranteed dealers that they will be the only dealer within a defined territory. Godfrey Marine does not generally enter into exclusive agreements; it does so only with dealers that agree to sell only Godfrey Marine products and commit to minimum purchase levels of Godfrey Marine's products.

Defendant Godfrey Marine does not require dealers to

- purchase a particular amount of products from Godfrey Marine in any given year (although it does give "volume discounts" to dealers who purchase boats in larger quantities);
- dedicate a certain amount of its showroom space for its products;
- maintain a particular level of Godfrey Marine inventory;

8

- purchase particular models of boats; or
- operate in conformity with any particular marketing plan or standard procedures.

(The parties dispute whether dealers are required to perform service work.  Defendant Godfrey Marine states that it does not require dealers to perform service work on Godfrey Marine's boats after the dealer has sold the boat.  Plaintiff disputes this fact by citing to the warranty, which states that the selling dealer must provide warranty services.)

Defendant Godfrey Marine does not place any requirements on its dealers relating to amounts or types of advertising, marketing or promotion of Godfrey Marine's products.  All advertising done by dealers is entirely voluntary.  Godfrey Marine does not require pre-approval of advertising, marketing, or promotions prepared by dealers.  Under certain circumstances, Godfrey Marine partially reimburses dealers for advertising paid for by dealers and directed at its products.  (Plaintiff cites an email message confirming its order of literature from defendant Godfrey Marine in attempt to show that it was forced to buy advertising materials, but the mere introduction of this document does not support the drawing of an inference that plaintiff was forced to buy the literature.)

Dealers are allowed to use defendant Godfrey Marine's logo and trademarks as they see fit, and they do so free of charge. Godfrey Marine does not require dealers to use its logo and trademarks in order to promote or advertise its products.

Godfrey Marine does not require dealers to employ a certain number of employees dedicated to its products or trained in its products.  (Plaintiff attempts to dispute this fact by citing the affidavit of Barb Howland, but nothing in the affidavit puts the fact into dispute.)

Godfrey Marine sells its boats to dealers at the bona fide wholesale price.  Dealers may sell the boats for whatever price they choose, with no restrictions placed on them by Godfrey Marine.  Godfrey Marine provides dealers with a manufacturer's suggested retail price for each boat it sells, but those prices are simply guides for dealers to use when pricing their boats.

Godfrey Marine does not require dealers to pay it any fee to enter into a dealership relationship and it does not charge dealers any fees for the right to sell its boats.

Godfrey Marine maintains a "Dealer Locator" function on its website so that consumers can locate Godfrey Marine dealers in their area.  Dealers are placed on the website only if they have purchased a boat within the previous rolling 12-month period. Periodically, Godfrey Marine reviews the dealers listed on its website and removes them if they have not purchased a Godfrey Marine boat within the previous 12-month time period. Godfrey Marine established this policy to ensure that customers intending to purchase current boats are able to locate dealers that have current model year boats. This policy applies to all Godfrey Marine dealers.

## C.  Defendant Godfrey Marine's Warranty Procedures

All of defendant Godfrey Marine's products are covered by express written warranties. The warranty is a lifetime warranty for the boat's structure and a one-year limited warranty for the repair and replacement of some parts.  The warranty extends only to the original purchaser of the boat. The warranty also applies to repairs conducted while a boat is in a dealer's possession, before it has been sold to a consumer.  The warranty limits the types of damages available, stating that

> DAMAGE LIMITATIONS AND ORAL AND IMPLIED WARRANTY LIMITATIONS: POLAR KRAFT WILL NOT BE RESPONSIBLE FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES, INCLUDING BUT NOT LIMITED TO: LOSS OF USE OF THE PRODUCT, LOSS OF TIME, INCONVENIENCE, EXPENSE FOR TRAVEL, LODGING, TRANSPORTATION CHARGES, LOSS OR DAMAGE TO PERSONAL PROPERTY, OR LOSS OF INCOME.

Godfrey Marine requires that dealers register the first purchaser of each boat with Godfrey Marine, because the warranty applies only to the first purchaser.  The warranty provides specifically that "OWNER REGISTRATION INFORMATION MUST BE ON FILE WITH THE WARRANTY DEPARTMENT BEFORE ANY WARRANTY REQUESTS CAN BE HONORED."  Godfrey Marine requires registration so that it can accurately track a boat's owner.  Godfrey Marine will not handle warranty claims when the owner registration has not been properly completed.

11

The warranty provides that warranty claims must be submitted within 30 days after discovery of the defect and must be received during the warranty coverage period or no later than 30 days after its expiration.  Godfrey Marine has established Warranty Procedures under which dealers can submit warranty claims for reimbursement. The Warranty Procedures are provided to dealers on an annual basis.

The Warranty Procedures state that repairs in excess of $100 must be approved by Godfrey Marine's customer service department in advance of the repairs being conducted. The Warranty Procedures state that failure to have work approved in advance may result in the rejection of the claim.  Under the Warranty Procedures, all warranty claims must be submitted in writing on a warranty claim form and must contain the following information:

- Dealer name and address
- Owner of boat if not a stock unit
- Model and Serial numbers
- Godfrey Marine delivery date and invoice number
- Customer purchase date
- Date of failure
- Signature of person filing the claim

Godfrey Marine provides a sample warranty claim form for dealers to use in preparing their forms.  All warranty claims must be submitted within a reasonable time after the work is performed.  Godfrey Marine establishes a "labor rate" for each dealer, which is the rate at which all repairs will be reimbursed.  Godfrey Marine will not reimburse warranty claims for work performed at a higher rate.  When a dealer submits a warranty claim for work

12

performed at a rate higher than the established labor rate, Godfrey Marine reduces the rate to the approved rate and pays the warranty claim. If a dealer disagrees with the labor rate established by Godfrey Marine or with Godfrey Marine's treatment of any of the dealer's requested repairs, Godfrey Marine has an established appeals process by which dealers may request reconsideration of their warranty claims.

### D. Godfrey Marine/The Dry Dock's Relationship

Plaintiff The Dry Dock applied to become a Polar Kraft dealer in December 2005 and was approved as a Godfrey Marine dealer on December 16, 2005. Plaintiff completed a Boat Program Application, requesting the use of Godfrey Marine's boats to demonstrate the product to potential buyers of its boats.

No dealership contract, either oral or written, exists between plaintiff and Godfrey Marine. Either party can terminate the relationship at any time. (Plaintiff attempts to dispute this by stating that there "are a myriad of Exhibits identifying in writing the intent of the parties" but then fails to cite any documents other than ones that I have already determined must be disregarded.) Over the course of their relationship, defendant Godfrey Marine did not require plaintiff to make any investments in special facilities for the purpose of storing or showcasing its boats or developing goodwill.

In addition to the Polar Kraft line of boats, plaintiff sells a wide variety of boats, boat accessories, docks and outdoor power equipment, such as snow blowers, lawn mowers, and chainsaws. The boats and engines sold by plaintiff have included lines other than those from Godfrey Marine, including Yar-Craft, Evinrude, Johnson, Vectra, Mercury, Yamaha, and Suzuki.

Plaintiff advertised Godfrey Marine-manufactured boat brands along with several other brands in an effort to draw consumers to its retail location to view all of the various boats and other boating products it offered. Plaintiff services all types of boats, including Godfrey Marine's.

Plaintiff has purchased a total of 27 boats from Godfrey Marine since becoming a dealer in 2006. It bought 21 model year 2006 boats, for a total purchase price of $370,603.90; five model year 2007 boats, for a total purchase price of $53,311.73; and one Godfrey Marine boat for $15,360.00 in 2008. Plaintiff has not purchased any model year 2009 or model year 2010 boats from Godfrey Marine. Plaintiff's total revenue in 2007 was $956,000.36. In 2008, its total revenue was $718,916.59.

All of the boat and trailer combinations featuring defendant Lippert's trailers were received by plaintiff by June 2006. Plaintiff has no written contracts, dealer agreements or franchise agreements with Lippert. (Plaintiff attempts to dispute this but produces no

evidence to support its assertion that it had a written contract or dealer agreement.) Plaintiff's first communication with Lippert was an email on August 15, 2006.

Plaintiff failed to fully comply with Godfrey Marine's registration process in dealing with problems in the boats it received. When it complained to Godfrey Marine's customer service department about problems it was having with Godfrey Marine boats and Lippert trailers, it did not obtain prior approval for the work performed on the warranty claims it has submitted. Of the 58 warranty claim forms submitted by plaintiff in support of its claims, Godfrey Marine has a record of only 12 that were provided to it under the Warranty Procedures. Plaintiff turned over the additional 46 claims to Godfrey Marine after initiating this lawsuit. Godfrey Marine has paid plaintiff for all repairs conducted in accordance with its established Warranty Procedures. Defendant Godfrey Marine removed plaintiff from the "Dealer Locator" section of its website sometime between September 2008 and January 2009.

OPINION

A. Summary Judgment

The standards for summary judgment are well known. Summary judgment is appropriate if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Weicherding v. Riegel, 160 F.3d 1139,

15

1142 (7th Cir. 1998).  The moving party must make a prima facie showing that it is entitled to summary judgment.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 331 (1986).  If the non-movant fails to make a showing sufficient to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment for the moving party is proper.  <u>Id.</u> at 322.  When considering a motion for summary judgment, the court must examine the facts in the light most favorable to the non-moving party.  <u>Sample v. Aldi, Inc.</u>, 61 F.3d 544, 546 (7th Cir. 1995).

Plaintiff's complaint sets out the following claims: (1) breach of contract claims against defendants for providing defective boats and trailers to plaintiff and then failing to reimburse plaintiff for repairs it performed; (2) claims for anticipatory breach of contract; (3) claims under the Wisconsin Fair Dealership Law; (4) claims under the Wisconsin Franchise Investment Law; and (5) claims for punitive damages based on defendants' intentional and malicious breach of contract.  From the complaint it appears that plaintiff seeks to bring each claim against both defendants.  In addition, plaintiff stated the following claim as the third cause of action in its complaint:

> The Plaintiff, to its detriment, relied upon the Defendants to have provided dealer reliable products and responsible servicing.  The Plaintiff did not benefit as promised by the Defendants that they could market and deliver to the Plaintiff viable products the dealer could rely upon for competitive retail sales.

Defendants seek dismissal of this claim, stating that they cannot understand what claim plaintiff is trying to state with these allegations.  In its response, plaintiff fails to address defendants' arguments or otherwise oppose the motion.  From this silence, I assume that plaintiff is abandoning the claim.  I can see no downside to plaintiff in doing so.  The most likely reading of this claim is that it is a breach of the implied warranty of merchantability, which has been set out more cogently in claim one.  Accordingly, I will grant defendants' motions to dismiss this claim and turn to the remaining ones.

### B.  Breach of Contract/Warranty

The first cause of action in plaintiff's complaint rests on allegations that defendants breached contracts with plaintiff when (1) they sold plaintiff defective boats and trailers and (2) defendant Godfrey Marine failed to reimburse plaintiff for warranty repairs it performed.

### 1.  Implied warranty of merchantability

a. Defendant Godfrey Marine

Plaintiff's allegations that defendants sold plaintiff products that were materially defective and not fit for sale raise a claim of breach of the implied warranty of merchantability under Wis. Stat. § 402.314.  Defendant Godfrey Marine argues that any "purported breach of contract claim fails because Plaintiff has not identified any alleged

17

contract or agreement between the parties."  This argument is puzzling because it is undisputed that plaintiff purchased 27 boat and trailer combinations from Godfrey Marine. Not only is each purchase a contract that includes an implied warranty of merchantability, § 402.314, Godfrey Marine's express warranty does not disclaim the implied warranty of merchantability.  Because Godfrey Marine fails to show why summary judgment should be granted in its favor on this claim, I will deny its motion for summary judgment.

However, the damages plaintiff seeks are limited by defendant Godfrey Marine's express warranty, which states among other things that defendant "will not be responsible for any incidental or consequential damages."  Plaintiff argues that this limitation is unconscionable, which is a question of law.  Trinkle v. Schumacher Co., 100 Wis. 2d 13, 18, 301 N.W.2d 255, 258 (Ct. App. 1980).

"Unconscionability has generally been recognized to include an absence of meaningful choices on the part of one of the parties together with contract terms which are unreasonably favorable to the other party."  Discount Fabric House v. Wisconsin Telephone Co., 117 Wis. 2d 587, 601, 345 N.W.2d 417, 424 (1984).  Factors to be considered when determining unconscionability can be divided into procedural and substantive categories. Procedural factors include the parties' age, intelligence, business experience, bargaining power, whether the terms were explained to the weaker party, whether alterations in the terms were possible and whether there were alternative sources of supply.  Id. at 602, 345 N.W.2d at 425.  The

18

substantive determination is whether the contract terms are commercially reasonable.  Id. Both procedural and substantive factors must be present for a court to find contractual terms to be unconscionable.  Cottonwood Financial, Ltd. v. Estes, 2010 WL 2036963, ¶ 6 (Wis. Ct. App. May 25, 2010).

Unconscionability rarely exists in a commercial setting involving parties of equal bargaining power.  Trinkle, 100 Wis. 2d at 19, 301 N.W.2d at 259.  This is because there is little need for the court to protect the interests of savvy commercial parties in dealings with each other.  With yearly revenues approaching $1 million, plaintiff would be hard pressed to contend that it is so unsophisticated as to need legal protection in this kind of commercial setting.  Even if it were a vulnerable customer, the circumstances of this case do not amount to unconscionability.  Plaintiff cites Trinkle as a specific example of unconscionability in a commercial transaction, but the case is a far cry from its own situation.  In Trinkle, the contractual terms would have precluded *any* damages for plaintiff. Id.

Plaintiff is claiming consequential and incidental damages that far exceed the damages available to it under Wis. Stat. § 402.714(2) ("The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted").  I conclude that the provision of defendant Godfrey Marine's warranty limiting consequential and incidental

19

damages is not unconscionable.  Although plaintiff will have a chance at trial to prove its damages, it will be limited to the damages identified in Wis. Stat. § 402.714(2) and cannot claim any consequential or incidental damages.  As to the validity of this limitation, I will grant Godfrey Marine's motion for summary judgment.

b.  Defendant Lippert

As for defendant Lippert's allegedly defective trailers, Lippert moves for summary judgment on plaintiff's merchantability claim, arguing that there is no contract between it and plaintiff.  Lippert points out that it had no contact with plaintiff until August 2006, after plaintiff had purchased all of the allegedly defective trailers.  (Plaintiff attempts to dispute this but fails to provide admissible evidence.)  In response, plaintiff argues that it is the third-party beneficiary of a contract between defendants establishing Lippert as the provider of trailers for Godfrey Marine's boats.

The general rule is that only a party to a contract may recover under it, but there is an exception for a contract specifically made for the benefit of a third person.  Goossen v. Estate of Standaert, 189 Wis. 2d 237, 249, 525 N.W.2d 314, 319 (Ct. App. 1994). The person claiming to be a third-party beneficiary must show that the parties to the contract entered into it directly and primarily for the benefit of the third party.  Id.  An indirect benefit incidental to the contract is not sufficient.  Id.

20

Because plaintiff failed to submit *any* evidence indicating the nature of the contract between defendants, it remains purely speculative whether defendants entered into the contract for the benefit of plaintiff and its customers.  Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex, 477 U.S. at 322.  Accordingly, I will grant defendant Lippert's motion for summary judgment on this claim.  In addition, because the remainder of plaintiff's claims against Lippert are contingent upon the existence of a contract between the two parties, I will grant Lippert's motion for summary judgment on those claims.

However, I note that because I am denying defendant Godfrey Marine's motion for summary judgment on plaintiff's claim for breach of implied warranty of merchantability with respect to its delivery of both Godfrey Marine's boats and Lippert's trailers, Lippert will have to defend against Godfrey Marine's cross-claim seeking indemnification for the defective trailers.

c. Anticipatory breach

Defendant Godfrey Motors seeks dismissal of plaintiff's fourth cause of action on the ground that it does not state a claim.  The fourth cause of action states

21

The Plaintiff asserts with full force and effect its notice of claim and itemization of damages as a notice of anticipatory breach of contract. The Defendants failed to give assurances in good faith to rectify its breach and reestablish a contract relationship. As a direct result fo the breach of contract, the Defendants caused real and actual damages, as well as, future damages in an amount exceeding One Million Dollars ($1,000,000).

In its brief, plaintiff addresses this claim by reiterating its claim for breach of an implied warranty of merchantability, so it appears that this is not a separate cause of action. I will grant defendant's motion for summary judgment on this claim to the extent that it is duplicative. claim against defendant Godfrey Marine.


2. <u>Reimbursement for repair of defects</u>

Plaintiff claims that there were defects in 24 of the 27 boat and trailer combinations it bought from Godfrey Marine. Defendant Godfrey Marine's express warranty covers defects encountered by dealers as well as those encountered by the original retail purchaser. (Plaintiff argues that the express warranty "begins with [defendant Godfrey Marine's] mission statement, which states that it seeks to build "high-quality boats." As discussed above, I have already disregarded this document, but even if I considered it, plaintiff provides no authority for its assertion that a company's mission statement creates a binding contract with its customers. In any case, Godfrey Marine's express warranty already covers defects in its boats, making the mission statement irrelevant.)

22

The parties do not deny that plaintiff performed repair work on the allegedly defective boats and trailers but was not reimbursed for most of that work.  Godfrey Marine argues that it did not breach the express warranty because plaintiff did not follow the warranty procedures Godfrey Marine has implemented for the defects that are the subject of this lawsuit.  In particular, under those procedures all warranty claims must be submitted in writing on a warranty claim form, any repairs in excess of $100 must be approved by Godfrey Marine's customer service department and the retail purchaser must register his or her ownership online at the selling dealer.  (It does not appear that the ownership registration requirement applies when the dealer who discovers a defect before a sale takes place).

Plaintiff appears to argue both (1) that it has properly submitted warranty claim forms and (2) that the reimbursement provisions of the warranty were superseded by the parties' practice in handling warranty claims.  However, it is difficult to ascertain plaintiff's version of the facts because it failed to properly submit proposed findings.  In addition, its responses to defendant Godfrey Marine's findings of fact are vague and include little evidence supporting its assertions.  Regarding warranty claim forms, Barb Howland states in her affidavit that "[plaintiff] always called about all issues and discrepancies there may be and followed all instructions to rectify the problem.  If it was a warranty issue then we filled out a warranty form, sen[t] it in and some were paid and others were not."  She provides no

23

citations to evidence in the record that would support her assertion that plaintiff submitted warranty forms.  Mick Howland states in his affidavit that plaintiff has "addressed the issues in writing, on warranty forms, phone, fax, e-mails and by visiting the plant."  He then cites correspondence between plaintiff and Godfrey Marine, but none of the attached documents are warranty forms.  Mick Howland's affidavit includes correspondence showing that plaintiff eventually completed warranty forms on October 9, 2009, months after plaintiff filed this civil action.  From this evidence, it is clear that plaintiff has failed to put into dispute Godfrey Marine's proposed finding that plaintiff failed to fulfill the warranty procedures.

That leaves plaintiff's argument that the warranty procedures were superseded by the parties' practice in handling warranty claims.  Under Wisconsin law, an oral modification to a written contract may be enforced in equity.  Royster-Clark, Inc. v. Olsen's Mill, Inc., 2006 WI 46, ¶ 19, 290 Wis. 2d 264, 275, 714 N.W.2d 530, 535; see also Michael B. Apfeld et al., Contract Law in Wisconsin §§ 7.9–7.12 (3d ed. 2007).  However, there must be evidence in the record supporting the modification.  Royster-Clark, 2006 WI 46, ¶ 25.  All plaintiff provides in support of its argument that the express warranty was modified are bald assertions that previous warranty work was approved without adherence to the warranty procedures.  The Federal Rules of Civil Procedure require the party opposing summary judgment to "set forth specific facts showing that there is a genuine issue for trial."  Fed. R.

24

Civ. P. 56(e).  Conclusory allegations, unsupported by specific facts, will not suffice.  Payne v. Pauley, 337 F.3d 767, 772-73 (7th Cir. 2003) (citing Lujan v. National Wildlife Federation, 497 U.S. 871, 888 (1990).  Because plaintiff fails to set forth specific facts supporting its argument that the express warranty was modified, I will grant defendant Godfrey Marine's motion for summary judgment on this claim.

Although I have concluded that summary judgment should be granted on the remainder of plaintiff's claims against defendant Lippert because plaintiff fails to show there was a contract between the parties, I note that plaintiff attempts to raise a breach of warranty claim against Lippert without relying on a written contract.  This claim is based on the theory of promissory estoppel.

To prevail on a promissory estoppel claim under Wisconsin law, a plaintiff must present evidence establishing (1) a promise (2) on which the promisor should reasonably expect to induce action or forbearance, (3) which did induce such action or forbearance and (4) that injustice can be avoided only by enforcement of that promise.  Hoffman v. Red Owl Stores, Inc., 26 Wis. 2d 683, 133 N.W. 2d 267, 273 (1965).  However, as with its other claims, plaintiff fails at the outset by not identifying in its proposed findings of fact any promise made by Lippert.  Therefore, plaintiff cannot escape summary judgment on this claim.

25

C.  Wisconsin Fair Dealership Law

Plaintiff's next claim is that defendants violated the Wisconsin Fair Dealership Law by effectively terminating the dealership without notice to plaintiff.  Plaintiff's brief is somewhat difficult to understand.  Plaintiff seems to be arguing that defendants terminated the dealership by failing to reimburse plaintiff for warranty service and by removing plaintiff from the "dealer locator" on its website.  Defendant Godfrey Marine argues that there was never a dealership relationship as defined under the Wisconsin Fair Dealership Law.  Because I agree with defendant Godfrey Marine on this point, I will grant its motion for summary judgment on this claim.

The Wisconsin Fair Dealership Law was enacted to promote fair business relations between dealers and grantors, protect dealers against unfair treatment by grantors and provide dealers rights and remedies in addition to those existing in contract or at common law.  The law defines a dealership as an agreement between two or more persons in which one is granted the right to sell or distribute goods or services, "in which there is a community of interest in the business of offering, selling or distributing goods or services at wholesale, retail, by lease, agreement or otherwise."  Wis. Stat. § 135.02(3)(a).

In Ziegler Co. v. Rexnord, Inc., 139 Wis. 2d 593, 604-06, 407 N.W.2d 873,  879-80 (1987), the Wisconsin Supreme Court identified a number of factors for courts to consider in determining whether the dealer and grantor have a continuing financial interest and

26

interdependence great enough to threaten the financial health of the dealer if the grantor were to exercise its power to terminate the relationship:

> how long the parties have dealt with each other; the extent and nature of the obligations imposed on the parties in the contract or agreement between them; what percentage of time or revenue the alleged dealer devotes to the alleged grantor's products of services; what percentage of the gross proceeds or profits of the alleged dealer derives from the alleged grantor's products or services; the extent and nature of the alleged grantor's grant of territory to the alleged dealer; the extent and nature of the alleged dealer's uses of the alleged grantor's proprietary marks (such as trademarks or logos); the extent and nature of the alleged dealer's financial investment in inventory, facilities and good will of the alleged dealership; the personnel which the alleged dealer devotes to the alleged dealership; how much the alleged dealer spends on advertising or promotion expenditures for the alleged grantor's products or services; the extent and nature of any supplementary services provided by the alleged dealer to consumers of the alleged grantor's products of services.

Applying these factors to the current case, the parties' relationship started in December 2005, making it only three and a half years old when plaintiff filed this suit. Defendant Godfrey Marine did not charge plaintiff any fees for selling its boats.  It did not grant plaintiff particular territory or grant any exclusive right to plaintiff.  It did not place many requirements on plaintiff, such as requiring it to purchase a certain number of boats, purchase particular models of boats, dedicate a certain amount of its showroom to showing its products, maintain a particular level of inventory, operate in conformity with any particular marketing or advertising plan or employ a certain number of employees dedicated

27

to its products or be trained in its products.  It may be that plaintiff was required to perform warranty service but that is not clear from the record.

Although it appears from incomplete figures that a substantial percentage of plaintiff's 2006 revenue came from the sale of defendant Godfrey Marine's products (neither party proposes a fact about plaintiff's 2006 revenue), only about 6% of plaintiff's 2007 revenue and 2% of its 2008 revenue came from the sale of Godfrey Marine's products.  It is undisputed that plaintiff sells many other brands.

Further, although plaintiff produced advertisements that showed the use of defendant Godfrey Marine's trademarks, advertising exhibits provided by Godfrey Marine show that plaintiff used its trademarks in conjunction with the trademarks of the many other brands it sells, making the financial investment in utilizing Godfrey Marine's marks only a small percentage of its advertising expenditures.

Given these facts, there is nothing that plaintiff can point to in favor of calling the parties' relationship a dealership as defined by the Wisconsin Fair Dealership Law.  The ultimate question is whether the grantor has the alleged dealer "over a barrel," that is, whether it has such economic power over the dealer that the dealer will be unable to negotiate with the grantor or comparison-shop with other grantors.  Praefke Auto Electric & Battery Co. v. Tecumseh Products Co., 255 F.3d 460, 464-65 (7th Cir. 2001).  The facts adduced by the parties show that the parties' relationship was limited in scope and that

28

defendant Godfrey Marine did not have plaintiff "over a barrel" because of their relationship. Therefore, I will grant Godfrey Marine's motion for summary judgment on this claim.

### D.  Wisconsin Franchise Investment Law

Plaintiff contends that defendants terminated a franchise agreement between the parties, violating the Wisconsin Franchise Investment Law, which was enacted in 1971 to require persons offering or selling franchises to make disclosures to prospective franchisees. This law applies only to franchise relationships, so I must consider first whether the parties' agreements created a franchise. Wis. Stat. § 553.03(4)(a) defines a franchise as follows:

> (4)(a) "Franchise" means a contract or agreement, either express or implied, whether oral or written, between 2 or more persons by which:
>
> 1.  A franchisee is granted the right to engage in the business of offering, selling or distributing goods or services under a marketing plan or system prescribed or suggested in substantial part by a franchisor; and
>
> 2.  The operation of the franchisee's business pursuant to such plan or system is substantially associated with the franchisor's business and trademark, service mark, trade name, logotype, advertising or other commercial symbol designating the franchisor or its affiliate; and
>
> 3.  The franchisee is required to pay, directly or indirectly, a franchise fee.

Plaintiff argues that Wis. Admin. Code § DFI-Sec 31.01(4) provides clarification for the determination of a franchise agreement.  The Code provision sets out five factors to be considered by the state Division of Securities in determining "whether a marketing plan or

system is deemed to be 'prescribed in a substantial part by a franchisor' within the meaning of s. 553.03(4)(a)1." The first four factors are whether the alleged franchisee is required to (1) purchase a substantial portion of its goods solely from sources approved by the franchisor; (2) follow an operating plan, standard procedure or training manual; (3) limit the type, quality or quantity of the products it sells; and (4) allow the franchisor to assist in training, obtaining locations or facilities for operation or in marketing the franchisor's products. The fifth factor is whether the alleged franchisor has the unilateral right to terminate the agreement.

Plaintiff provides almost no facts showing that these factors are met. It argues mainly that the first and third prongs were met by the requirement that it purchase trailers from defendant Lippert. However, as discussed above, the undisputed facts show that these factors are not met; plaintiff earned very little of its revenue in 2007 and 2008 from defendants' products; defendant places almost no requirements on plaintiff and certainly never forced it to follow an operating plan or limited it in terms of what other products it could sell, as shown by the wide range of brands it carried. And in any case, Godfrey Marine provides the undisputed fact that it never charged a franchise fee, as required to form a franchise under § 553.03(4)(a)3. From these facts, I conclude that the Wisconsin Franchise Investment Law does not apply to the relationship between plaintiff and defendant Godfrey Marine and I will grant Godfrey Marine's motion for summary judgment on this claim.

E.  Punitive Damages

Plaintiff's sixth cause of action is one for punitive damages.  Under Wisconsin law, punitive damages are not available as a remedy for a breach of contract action.  Weiss v. United Fire & Casualty Co., 197 Wis. 2d 365, 393, 541 N.W.2d 753, 763 (1995).  The only claim remaining in this action is plaintiff's contract claim that defendant Godfrey Marine breached an implied warranty of merchantability by selling plaintiff defective boats and trailers.  Punitive damages would not apply to this claim.  Accordingly, I will grant defendant's motion for summary judgment on this claim.

ORDER

IT IS ORDERED that

1.   The motions of defendants Godfrey Marine and Lippert Component Manufacturing to dismiss plaintiff The Dry Dock's third cause of action is GRANTED.

2.   Defendant Godfrey Marine's motion for summary judgment, dkt. #69, is DENIED on plaintiff's claim for breach of an implied warranty of merchantability.  Its motion is GRANTED as to the remainder of plaintiff's claims.

3.  Defendant Lippert Components Manufacturing's motion for summary judgment, dkt. #64, is GRANTED on all of plaintiff's claims.

31

4.   This case will proceed to trial on (1) plaintiff's claim that Godfrey Marine breached an implied warranty of merchantability by selling plaintiff defective boats and trailers, with damages limited as set out in Wis. Stat. § 402.714(2); and (2) Godfrey Marine's cross-claim against Lippert seeking indemnification for the defective trailers.

Entered this 7th day of June, 2010.

BY THE COURT:

/s/

_____

BARBARA B. CRABB
District Judge